

**FILED**

APR 2 0 2012
4-20-12

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
) No. 11 CR 84
vs. )
) Judge Rebecca Pallmeyer
SHU BEI YUAN, a/k/a KATHY YUAN )

### PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant SHU BEI YUAN, a/k/a KATHY YUAN, and her attorney, STEPHEN KOMIE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The superseding information in this case charges defendant with Entry of Goods into the United States by Means of False Statements, in violation of Title 18, United States Code, Sections 542 and 2.

3.      Defendant has read the charge against her contained in the superseding information, and that charge has been fully explained to her by her attorney.

4.      Defendant fully understands the nature and elements of the crime with which she has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the superseding information, which charges defendant with entering and causing to be entered goods into the United States by means of false and fraudulent statements and documents, in violation of Title 18, United States Code, Sections 542 and 2; that is, 26 entries compromised of Chinese-origin honey falsely declared as Korean-origin honey having a total declared value upon entry into the United States of at least $808,287, thereby avoiding antidumping duties otherwise applicable to Chinese-origin honey of approximately $1,485,631.

### Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charge contained in the information.  In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt for the offense of conviction and, pursuant to Guideline § 1B1.3(a), all acts aided, abetted, counseled, procured, or willfully caused by the defendant, including all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity, which constitutes relevant conduct for the defendant's scheme, as described below:

That beginning in or about March 2005 and continuing until in or about November 2005, at Chicago in the Northern District of Illinois, Eastern Division, and elsewhere, SHU BEI YUAN and others conducted a scheme to fraudulently enter goods into the United States

2

by means of false statements and documents, in violation of Title 18, United States Code, Sections 542 and 2. The purpose of the scheme was to import, enter, and sell Chinese-origin honey into the United States and avoid the payment of antidumping duties by falsely declaring to United States Department of Homeland Security, Bureau of Customs and Border Protection ("CBP") that the imported honey originated from countries other than China, including South Korea, when in fact SHU BEI YUAN and her co-schemers knew that the honey originated from China.

More specifically, defendant SHU BEI YUAN is a citizen and national of the Peoples Republic of China who worked for and with Hung Ta Fan and others to enter and import Chinese honey into the United States by means of false documents. Fan owned and operated multiple California-based honey import companies, including Blue Action Enterprise, Inc. ("Blue Action") and Honey World Enterprise Inc. ("Honey World"), that acted as registered importers of record to import and enter Chinese-origin honey into the United States. YUAN worked for and with Fan from approximately June 2004 through September 2005, and handled the books and records of Fan's companies. Fan used multiple companies, including Blue Action and Honey World, to import and enter Chinese-origin honey into the United States to avoid scrutiny by CBP. Fan created Honey World after being advised by other co-schemers that a high volume of imports into the United States by a single company would be noticed by CBP.

3

In approximately the spring of 2004, YUAN introduced Fan to executives of Alfred L. Wolff, Inc. ("ALW USA"), a subsidiary of Alfred L. Wolff GmbH ("ALW Germany"), a German international trading company with subsidiaries, affiliates, and representative offices located throughout the world that imported, exported, distributed, sold, and processed raw material and food products, including honey. Among ALW Germany's other subsidiaries were Alfred L. Wolff Honey GmbH in Germany ("ALW Honey"); Alfred L. Wolff (Beijing) Trade Co. Ltd., China ("ALW Beijing"); and Alfred L. Wolff Company Ltd. Hong Kong, China ("ALW Hong Kong"), previously operating as Kirkam Co. Ltd. (all collectively, "ALW Food Group"). Acting together – and for the benefit of each other – ALW Food Group sourced, supplied, manufactured, purchased, and sold ingredients and food products, including honey, through its employees, managers, and executives, including Alexander Wolff, Jürgen Becker, Tom Weickert, Marcel Belten, Yi Liu, Sven Gehricke, Thomas Marten, and Thomas Gerkmann (collectively "ALW Food Group Executives").

On March 17, 2005, ALW USA issued purchase order number 660 to Blue Action for 200 full container loads of "Taiwan White Honey," valued at approximately $4,572,000, and YUAN signed purchase order 660 on behalf of Blue Action on March 22, 2005. Over the next several months, the honey imported to fulfill this purchase order was nearly all adulterated with sugars and largely rejected by ALW's customers. Fan therefore arranged for Chinese Honey Broker 1 to begin supplying Chinese honey transhipped through Korea and falsely imported into the United States as Korean honey to fulfill the ALW contract. YUAN handled most of the arrangements with ALW.

4

Thus, on May 26, 2005 Thomas Gerkmann emailed YUAN regarding "Late delivery on PO 624 and 660" and stated "…we will discuss it when you are back and I hope to see you and Michael here in Chicago next week that we can discuss this as well as a lot more business for future. Korea etc." On July 15, 2005, YUAN sent Gerkmann a sample of Chinese honey falsely labeled as "Korean Honey" to be tested for sugar adulterants, and on July 20, 2005 Gerkmann emailed YUAN regarding "Korea Honey" and stated "GOOD NEWS THE KOREA HONEY IS OK AS WELL PLEASE START TO SHIP MORE[.]" On August 8, 2005, ALW USA issued purchase order number 737 for 10 full container loads of "Korean White Honey," valued at approximately $219,008, and YUAN signed the purchase order on August 9, 2005.

Between approximately August and November 2005, YUAN, Fan, ALW Food Group, Alexander Wolff, Jurgen Becker, Thomas Marten, Thomas Gerkmann, Yi Liu, Thomas Weickert, Marcel Belten, Sven Gehricke, Chinese Honey Broker 1, and others known and unknown, caused Blue Action to fraudulently import and enter into the United States approximately 26 entries of Chinese-origin honey falsely declared as Korean honey for ALW Food Group, having a total declared entry value of approximately $808,287, thereby avoiding antidumping duties otherwise applicable to Chinese-origin honey totaling approximately $1,485,631. One of those entries occurred on August 23, 2005 when YUAN entered and introduced, and caused others to enter and introduce, into the commerce of the United States, imported merchandise by means of a false and fraudulent practice, false statement, and

5

fraudulent or false paper, including records and CBP entry forms 3461 and 7501, bearing entry number K80-0911650-1, that falsely declared that approximately 37,120 kilograms of Chinese-origin honey in fulfillment of purchase order 660, with a declared value upon entry of approximately $31,552, originated from Korea, when in fact the honey originated in China, thereby causing losses to the United States totaling approximately $57,992 in uncollected antidumping duties, in violation of Title 18, United States Code, Sections 2 and 542.

## **Maximum Statutory Penalties**

7.      Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 2 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## **Sentencing Guidelines Calculations**

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2011 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in the information is 22 pursuant to Guidelines §§ 2T3.1(a)(1) and 2T4.1(I) because the total amount of antidumping duties avoided, that is, approximately $1,485,631, exceeded $1 million but was less than $2.5 million.

ii.    Pursuant to Guideline §2T1.1(b)(2), defendant's offense level is increased by 2 levels because defendant's offense involved sophisticated means.

iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to

accept responsibility for her actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 22, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 41 to 51 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. However, the defendant is pleading guilty to an offense with a statutory two year maximum sentence.

        e.    Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

Officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

       f.     Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraph (b) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraph.

       g.     Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.    At the time of sentencing both parties are free to make whatever recommendations they believe are appropriate to the court.

11.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

12.    Regarding restitution, the parties acknowledge that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution to the United States in an amount to be determined by the Court at sentencing, which based on the facts known to the parties at this time, amounts to approximately $1,485,631, and which amount shall reflect credit for any funds repaid prior to sentencing.

13.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k) she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

14.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

**<u>Acknowledgments and Waivers Regarding Plea of Guilty</u>**

**Nature of Plea Agreement**

16. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 84.

17. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

18. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations.

19. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a. **Right to be charged by indictment**. Defendant understands that she has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives her right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b. **Right to be charged within the statute of limitations.** Defendant has the right to be prosecuted for her crimes within five years of their commission. By signing this Plea Agreement, defendant knowingly consents to prosecution of the charge against her even though it is outside the 5 year statute of limitations.

c. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if she does, she would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could

13

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.  If defendant desired to do so, she could testify in her own behalf.

c.    **Waiver of appellate and collateral rights.**  Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed.  Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Plea Agreement.  Defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) her attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.  The waiver in this paragraph does not apply to a claim of involuntariness, or

14

ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

d.     Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

e.     Defendant understands that she has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Plea Agreement, defendant knowingly consents to prosecution of the charge against her in the Northern District of Illinois and waives any objection to the venue of this prosecution.

### Presentence Investigation Report/Post-Sentence Supervision

20.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the

Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

23.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing

16

financial statements and supporting records as requested by the United States Attorney's Office.

24.     Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the Court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her guilty plea may entail, even if the consequence is her automatic removal from the United States.

If the government elects to call defendant as a witness in the case of *United States v. Alfred Wolff*, 08 CR 417 (J. St. Eve), and defendant testifies truthfully in that case, the government agrees to advise the immigration authorities in writing of defendant's cooperation.

## Conclusion

25.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term

17

of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29.  Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:  4.20.12

PATRICK J. FITZGERALD
United States Attorney

SHU BEI YUAN
Defendant

WILLIAM R. HOGAN
Assistant U.S. Attorney

STEPHEN KOMIE
Attorney for Defendant

ANDREW BOUTROS
Assistant U.S. Attorney

19